C O P Y

OFFICE OF THE ATTORNEY GENERAL OF TEXAS

AUSTIN

Honorable W. R. Yancy
County Auditor
Tarrant County
Fort Worth, Texas

Dear Sir:

>Opinion No. O-1539
>Re: Whether or not it is nec-
>essary to record liens on
>motor vehicles subsequent
>to the effective date of
>House Bill No. 407, 46th
>Legislature.

We are in receipt of your letter of September 9, 1939, in which you request an opinion of this Department as to whether or not it is necessary to record liens on motor vehicles in the county clerk's office since the passage of the Certificate of Title Act.

The answer to your question depends upon whether or not the Certificate of Title Act supersedes or repeals the general recording statutes as to motor vehicles. It is necessary, therefore, to consider the law concerning the registration of motor vehicles prior to October 1, 1939, and also to consider the effect of the provisions of the Certificate of Title Act upon the same.

Article 5490 of the Revised Civil Statutes provides, in part, as follows:

>"Every chattel mortgage, deed of trust or other instrument of writing, intended to operate as a mortgage, or lien upon personal property, and every transfer thereof, which shall not be accompanied by an immediate delivery and be followed by an actual and continued change of possession of the property mortgaged, pledged, or affected by such instrument, shall be absolutely void as against the

creditors of the mortgagor or person making same, as against subsequent purchasers and mortgagees or lien holders in good faith, unless such instrument, or a true copy thereof, shall be forthwith deposited with and filed in the office of the county clerk of the county where the property shall then be situated, or if the mortgagor or person making the same be a resident of this State, then, of the county of which he shall at that time be a resident; * * * *"

Article 5497 of the Revised Civil Statutes reads as follows:

"Chattel mortgages and other instruments intended to operate as mortgages or liens upon personal property shall not be recorded at length, and all persons shall be thereby charged with notice thereof, and of the rights of the mortgagee, his assignee or representatives thereunder."

Article 5497a of the Revised Civil Statutes reads as follows:

"That all chattel mortgages hereafter given as security for money advanced for the purchase of motor vehicles shall, when registered as required by law of chattel mortgages, be and are superior to the claim or claims of other creditors even though such motor vehicle or vehicles are daily exposed for sale. Provided, however, any such chattel mortgage shall be void as to bona fide purchasers when such motor vehicles are daily exposed for sale."

A proper construction of the above quoted Articles discloses three major legal operations of said Laws.

First, Article 5490 makes unrecorded chattel mortgages absolutely void as against subsequent purchasers and mortgagees or lien holders in good faith. This provision is inherent in our recording statutes and is necessary and indispensable for a proper operation of such laws.

Second, the recording statutes quoted operate to give constructive notice to the world of a duly recorded chattel mortgage. It is to be remembered that Article 5497 uses the words "and all persons shall be thereby charged with notice thereof." It would be impossible to enumerate all of the cases decided by the courts of this State which so hold. The proposition is clearly stated in the case of Murray Company v. Deal., 175 S. W. 718:

> "From the time the mortgage is so deposited for registration, it becomes constructive notice of the mortgagees lien."

See also the cases of Thorndale Mercantile Company, et al., v. Continental Gin Company, 217 S. W. 1059, and the Supreme Court case of Oxsheer v. Watt, 44 S. W. 67.

The third major principle of law which is a result of our recording statutes is that the priority of liens is determined by the date of filing for record of such liens. As a general rule the one first filed for record takes priority over those later filed. See Smelser v. Baker 29 S. W. 377; Third National Bank of Springfield Massachusetts, et al v. National Bank of Commerce, et al., 139 S. W. 665; J. M. Radford Grocery Company v. Pace, et al., 172 S. W. 146; Dallas County State Bank v. Grismon, et al., 231 S. W. 857; Ridgill v. E. L. Wilson Hardware Company, et al., 178 S. W. 668; Moore v. First State Bank of Livingston, 127 S. W. (2d) 536.

House Bill No. 407, Acts of the 46th Legislature, went into effect on October 1, 1939. It is the opinion of this Department that it is now unnecessary to record liens against motor vehicles in the county clerks' offices. This conclusion is based upon three reasons.

First, House Bill No. 407 is a new enactment dealing specifically with motor vehicles and concerns the same general subject as the general recording statutes. There can be no question but that the recording statutes and House Bill No. 407 are both designed to protect the innocent purchaser and the lien holder. House Bill No. 407 was passed because the Legislature found that the general recording statutes did not offer sufficient protection in the cases of motor vehicles. That this is true may be seen from Section 1 of House Bill No. 407:

> "This Act shall be referred to, cited, and known as the 'Certificate of Title Act,'

and in the enactment hereof it is hereby declared to be the legislative intent and public policy of this State to lessen and prevent the theft of motor vehicles, and the importation into this State of and traffic in stolen motor vehicles, and the sale of encumbered motor vehicles without the enforced disclosure to the purchaser of any and all liens for which any such motor vehicle or the tires, radios, parts, or appliances thereof stands as security, and the provisions hereof, singularly and collectively, are to be liberally construed to that end. The following terms as herein defined shall control in the enforcement and construction of this Act."

That the Legislature considered the present law inadequate to prevent the thing set out in Section 1 of the Act is further emphasized by the emergency clause of House Bill No. 407, which reads as follows, in part:

"* * * * and that many liens have been created against motor vehicles to the serious financial loss of a large number of persons, and the fact that an early adoption of this Act will operate to materially safeguard dealing in motor vehicles and using the same as security * * * *"

Having seen the Legislature's finding that the present recording statutes are inadequate as protection in the cases of motor vehicles, the next consideration is whether or not the Legislature can repeal or suspend the operations of the general recording statutes as to motor vehicles by such an enactment as House Bill No. 407 without specifically stating that the same are suspended. In this connection a number of rules of statutory construction are important.

The question of repeal, whether express or implied, is one of legislative intent. See Rogers v. Watrous, 8 Tex. 65; St. Louis S. W. Railway Company v. Kay, et al., 85 Tex. 558; First National Bank v. Lee County Cotton Oil Company, 274 S. W. 127; Berry v. State, 156 S. W. 626; State v. Texas and N. O. R. Company, 125 S. W. 53; Fortinberry v. State, 46 S. W. (2d) 146.

Section 65 of House Bill No. 407 is a general repeal-
in clause which reads as follows:

"All acts or parts of acts inconsistent
with the provisions of this Act are hereby
repealed."

A general repealing clause is effective to repeal
prior enactments to the extent that they are inconsistent with,
or repugnant to, the terms of the later statute. The Supreme
Court of Texas in an opinion written by Judge Gaines in the
case of Gaddis, et al. v. Terrell, Land Commissioner, 110 S. W.
429, in construing a general repealing clause which reads as
follows:

"All laws and parts of laws in conflict
with the provisions of this Act are hereby
repealed."

had this to say about the proposition:

"It is clear that there is no express
repeal; that is, the provision in question
is not directly pointed out as expressly
repealed. But since the effect of a gen-
eral provision repealing conflicting laws
evinces that the Legislature had in mind
that something was to be repealed, the
courts will be less inclined against recog-
nizing repugnancy in applying such a statute."

The language above quoted was also quoted in the case of
Johnson v. Johnson, 55 S. W. (2d) 153.

There is another rule of statutory construction which
is directly applicable to the case at hand. Where it is apparent
that a statute is intended to embrace all the law upon the sub-
ject with which it deals, it supersedes all former laws relating
to the same subject. This rule of construction was invoked by
the Commission of Appeals of Texas in the case of First National
Bank v. Lee County Cotton Oil Company, supra, in a case which was
in many respects analogous to our present situation. That case
construed Article 579 of the Revised Civil Statutes of 1911 which
provided a means of fixing liability of drawers and endorsers of
bill of exchange other than by protest and notice. The Court held
that the uniform negotiable instrument act of 1919 repealed Article

579 because the later act treated of the same subject matter
as the former. The uniform negotiable instrument act contained
a general repealing clause which was exactly identical with the
general repealing clause in House Bill No. 407. The Court
quoted from the case of St. Louis S. W. Railway Company v. Kay,
et al., supra, in an opinion written by Judge Gaines. This
language was a quotation from the case of Rogers v. Watrous,
supra, in which the Supreme Court of Texas speaking through
Judge Wheeler, said as follows:

> "A subsequent statute revising the
> subject matter of a former one, and evident-
> ly intended as a substitute for it, although
> it contains no express words to that effect,
> must oper te to repeal the former to the ex-
> tent to w ich its provisions are revised and
> supplemented. So though a subsequent stat-
> ute be not repugnant in its provision to a
> former one, yet if it was clearly intended to
> prescribe the only rule which should govern,
> it repealed the prior statute."

The Court in the First National Bank case also quoted
from the language of the case of State v. Houston Oil Commission
of Texas, 194, S. W. 432:

> "The rule is well settled that, when a
> subsequent statute shows by its context that
> it was intended to embrace all the law upon
> the subject dealt with, such statute will,
> by implic tion, repeal all former laws re-
> lating to the same subject. The correctness
> of that rule is not controverted, and it is
> unnecessary to cite authorities in support
> of it."

The Rogers and the St. Louis Railway cases were both
cited and followed in the case of State v. Texas & N. O. R. Com-
pany, supra.

The Supreme Court of Texas first expressed itself on
this matter in 1849 in the case of Bryan v. Sunberg in an opinion
written by Judge Wheeler. The Court said as follows:

> "But when the new statute in itself com-
> prehends the entire subject and creates a new,
> entire, and independent system respecting the
> subject matter, it is universally held to re-
> peal and supersededall previous systems and

laws respecting the same subject matter."

It is the opinion of this Department that, as to motor vehicles, the Legislature has now set up a new system of law for the protection of innocent purchasers and lien holders. This system is so complete in itself as to supersede the operations of the general recording statutes as to motor vehicles.

In the Second place, it is the opinion of this Department that House Bill No. 407 repeals the operation of the general recording statutes as to motor vehicles because it conflicts with them.

Where there is a general statute in force and then a specific statute is passed, both statutes remain in force except that the second supersedes the first as to the subject matter contained in said special statute. Fortinberry v. State, supra, and Townsend v. Terrell, 16 S. W. 1063. An examination of the pertinent provisions of House Bill No. 407 leads one to the inevitable conclusion that said Act is in conflict with the general recording statutes as to motor vehicles. This may be clearly seen from an examination of the effect of House Bill No. 407 upon the three major legal results of the general recording statutes as set out previously in this opinion.

In the first place under the general recording statutes no lien is valid against a subsequent purchaser and mortgagee or lien holder in good faith unless the same is recorded. House Bill No. 407 contains the following provisions concerning the validity of liens:

"Sec. 41. No lien shall be valid on any motor vehicle which is hereafter the subject of a first sale, or be enforceable against any such motor vehicle unless there is noted on the importer's or manufacturer's certificate the date, name, and address of the mortgagees whose rights arise out of or are incident to such first sale by reason of the execution of an written instrument by the transferee.

"Sec. 42. No lien on any motor vehicle shall be valid as against third parties without actual knowledge thereof or enforceable

against the motor vehicle of any such
third parties as the issuance of a cer-
tificate of title thereof, unless an ap-
plication for a new title is made as pre-
scribed in this Act and all first and subse-
quent liens noted by this Department thereon.

"Sec. 44. No lien on any motor vehicle
to which a receipt or certificate of title
has been issued shall be valid as against
third parties without actual knowledge there-
of, or enforceable against the motor vehicle
of any such third parties, unless the notation
of said lien shall have been caused to be made
on receipts and certificates of title on said
motor vehicle, as provided in this Act.

"Sec. 46. Only liens noted on a receipt
or certificate of title shall be valid as a-
gainst creditors of the mortgagor in so far as
concerns the motor vehicle."

The effect of these sections is that if the liens are
not recorded on the certificate of title the same are not valid
despite the fact that they may be recorded in the county clerk's
office. Also, under Section 46, if the lien is noted on the
certificate of title, said lien is valid despite the fact that
the same may not be recorded in the county clerk's office. So
the law is now that the recordation of a lien is immaterial to
its validity. Such validity depends entirely upon whether the
same is properly noted upon the certificate of title. In this
respect, House Bill No. 407 and the general recording statutes
are entirely in conflict.

Secondly, under the general recording statutes the
recording of a chattel mortgage in the county clerk's office
constitutes constructive notice to the public. The operation
of this law is completely done away with by Sections 33 and 51
of House Bill No. 407 which read as follows:

"Sec. 33. No motor vehicle may be
disposed of at subsequent sale unless the
owner designated in the certificate of
title shall transfer the certificate of
title on form to be prescribed by the De-
partment before a Notary Public, which

form shall include, among such other
matters as the Department may determine,
an affidavit to the effect that the
signer is the owner of the motor vehicle,
and that there are no liens against such
motor vehicle, except such as are shown
on the certificate of title and no title
to any motor vehicle shall pass or vest
until such transfer be so executed.

"Sec. 51. It shall hereafter be un-
lawful for any person, either by himself
or through any agent, to offer for sale
or to sell or to offer as security for
any obligation any motor vehicle register-
ed or licensed in this State without then
and there having in his possession the
proper receipt or certificate of title
covering the motor vehicle so offered."

It may also be pointed out that the caption of House
Bill No. 407 contains the following language:

"Providing that such certificate shall
constitute notice of such liens and mort-
gages, and prescribing the priorities of
liens and mortgages as against all parties."

Furthermore, liens which are recorded in the county
clerk's office after October 1st cannot serve as constructive
notice because of Sections 42 and 44 of said Act, above quoted,
which state that said liens are not valid unless noted on the
certificate of title. If said liens are not valid they cannot
serve as notice. So in this respect the general recording stat-
utes are in conflict with House Bill No. 407.

The Third legal result of the general recording stat-
utes, the establishment of priority of liens, has been entirely
superseded by House Bill No. 407 as to motor vehicles. Under
the general recording statutes the priority of liens is determin-
ed by the date those liens were filed for recordation in the
county clerk's office. Section 43 of House Bill No. 407 reads
as follows:

"All liens on motor vehicles shall take
priority according to the order of time the
same are recorded on the receipt or certi-
ficate of title of all such recordings to

be made by the Department."

So we find the law now that the priority of liens is determined by the order of the time the same are recorded on the receipt or certificate of title. Of necessity this destroys the priority as set up by the general recording statutes as to motor vehicles.

It is our opinion, therefore, that the provisions of House Bill No. 407 are directly in conflict with the general recordingsstatutes and as to motor vehicles must of necessity supersede such general recording laws.

It is the opinion of this Department that it will not be necessary to record a lien on a motor vehicle in the county clerk's office after the effective date of House Bill No. 407 for the third reason that the operation of House Bill No. 407 suspends the usefulness of the general recording laws because of the term in Article 5490 "in good faith." The courts have construed this term in many cases and have held that certain facts may exist which make a subsequent purchaser or a subsequent lien holder not one in good faith. A very good statement as to what is meant by the term "good faith" as used in the recording statutes was made by the court in the case of Burlington State Bank, et al., v. Marlin National Bank, et al., 166 S. W. 499:

"The expression 'good faith' as used in the statute providing that a chattel mortgage shall cease to be valid against the creditors of the person making the same or mortgagees in good faith after the expiration of one year from filing the same unless an affidavit of renewal is filed, is synonymous with 'conscience'. It embraces those obligations which are imposed upon one in dealing with property by the circumstances surrounding it at the time.

"A want of that caution and diligence which an ordinary man of ordinary prudence is accustomed to exercise in making purchases is, in judgment of law, a want of good faith."

See also South Texas Emplement & Machinery Co., et al.

Honorable W. E. Yancy, Page 11


v. Anahuac Canal Co., 269 S. W. 1097, affirmed by the Commission of Appeals in 280 S. W. 521; First National Bank of Stevenville v. Thompson, et al., 265 S. W. 884.

Under House Bill No. 407 before a motor vehicle may be offered for sale or offered for security, the owner of the same must obtain a certificate of title. For any lien to be valid and prior to a subsequent lien the same would have to be noted on said certificate of title. Let us suppose a situation where a person wishes to purchase a used car from another or wishes to take a lien against said car. In case of a purchase, it would be necessary for a transfer of said certificate of title to be made. In a case where he wishes to obtain a lien upon said car, said lien would have to be noted on the certificate of title and he would have the opportunity to examine the same to see if there were any prior liens noted thereon. He knows that a lien not noted thereon is not valid as against him. Suppose, however, there exists a valid lien against the car and the same is noted on said certificate of title but has not been recorded. In the first place, this certificate of title would be constructive notice to him such as to keep him from being a subsequent mortgagee in good faith under Article 5490. In the second place, even if it could be said that the certificate of title was not constructive notice to him, still the cases would indicate that he certainly could not be a good faith purchaser or mortgagee having had opportunity to examine said certificate of title which would come in his possession. By this line of reasoning we reach the conclusion that if a lien is not noted on the certificate of title it cannot be set up against subsequent purchaser or mortgagee. If said lien is noted on the certificate of title then there could be no good faith purchaser under Article 5490. In this way the entire effect and operation of the recording statutes as to motor vehicles is obliterated.

For the reasons discussed in answer to your first inquiry, it is the opinion of this Department that it is unnecessary for a lien to be recorded in the office of the county clerk. Nothing in this opinion, however, should be taken to mean that liens created and filed for records prior to October 1, 1939, are not valid.

The conclusion we have reached in construing our Texas statutes is similar to the conclusion reached by the courts of other states in construing their Certificate of Title Acts. The following quotation by the Supreme Court of Appeals of Virginia in the case of C. I. T. Corporation v. Guy, et al., 195 S. E. 659,

is directly in point:

> "In addition to the statutes noted
> the Motor Vehicle Code of Virginia also
> deals with this subject. Acts 1932, c.
> 342, p. 613; Acts 1934, c. 265, p. 580.
> Within its definition, a conditional
> sale is an encumbrance. Piedmont, etc.,
> Corp. v. Commonwealth, 146 Va. 287, 135
> S. E. 673. Registration cards and certi-
> ficates of title are issued by the Division
> of Motor Vehicles. They and the liens there-
> on appearing are sufficient notice to credi-
> tors and purchasers and do not have to be
> recorded locally."

The Federal District Court, Eastern District, Penn-
sylvania, in the case of In re Fell, 16 Fed. Supp. 987, held
the Pennsylvania Certificate of Title Act to be a recording
statute.

See also the cases of Enfield v. Butler, et al.,
264 N. W. 546, Supreme Court of Iowa, and Maryland Credit
Finance Corporation v. Franklin Credit Finance Corporation, et
al., 180 S. E. 408, Supreme Court of Appeals of Virginia.

While it is the opinion of this Department that it
is unnecessary to record chattel mortgages on motor vehicles
in the county clerk's office, in all probability many persons
who take mortgages against motor vehicles will wish to record
their liens in the county clerk's office as a matter of precau-
tion. This will probably be true until the courts of this State
decide whether or not such recordation is necessary. In such a
case you are advised that the county clerk shoul record the
mortgage, as has been heretofore done, and the same charge as
well as the same stamp tax should be assessed against the party
wishing a mortgage recorded.

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED NOVEMBER 7, 1939

(s) Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

By

(s) Billy Goldberg
Assistant

BG:RS:lw

APPROVED OPINION COMMITTEE BY (S) B. W. B., CHAIRMAN